UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-531-GWU

CHERYL A. BANKS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

    4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

    7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Cheryl A. Banks, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of hypoglycemia, depression, migraines, and degenerative joint disease. (Tr. 21). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform her past relevant work, and therefore was not entitled to benefits. (Tr. 24-6). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ obtained testimony from the VE that the plaintiff had a work history as a medical assistant, receptionist, billing clerk, data entry person, pharmacy technician, and general office clerk. (Tr. 317). The jobs varied in exertional requirements between sedentary and medium, and all were described as "semi-skilled," except for the job as medical assistant, which was skilled. (Id.). The ALJ asked the VE if the plaintiff could perform all of her previous

jobs if she were capable of medium level exertion, and received an answer in the affirmative. (Tr. 318).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff, who was 40 years old at the time of the ALJ's decision, and had a high school education with an associate's degree as a medical assistant (Tr. 51, 300), alleged disability due to a wide variety of problems including migraines on a weekly basis, chronic pain in the lower back and neck, numbness in the arms, legs, and feet, muscle spasms, depression, anxiety attacks, mood swings, and irritable bowel syndrome. (Tr. 69, 303-15). She stated that she had pain all over her body from fibromyalgia. (Tr. 315).

The ALJ discounted the plaintiff's claims of severe anxiety and depression on several grounds, including the assertion that the plaintiff had only seen a psychiatrist on one occasion and did not follow up and that she was never referred for psychological counseling or treatment. In fact, the plaintiff had been referred by her family physician to a Comprehensive Care Center (Tr. 157) and had been prescribed Prozac at least as early as 2003. (Tr. 152, 157). In August, 2005, she began to receive treatment from Dr. Martin Siegel, a psychiatrist. At that time, Dr. Siegel noted that she was being prescribed Prozac and Wellbutrin by her family physician for complaints of depression, anxiety, insomnia, anorexia, lethargy, anhedioinia,

crying spells, social isolation, panic attacks, and mood swings. (Tr. 205). Objectively, Dr. Siegel noted a depressed affect, tremors, and increased anxiety. (Id.). Dr. Siegel diagnosed her condition as "bipolar I," with depression and psychotic symptoms, increased the dosage of Wellbutrin, and added a sleep medication. (Id.). Although the ALJ apparently believed that the plaintiff did not return to Dr. Siegel, another note dated August 8, 2005 indicates that she had returned, did not fill the sleeping medication due to the cost, had left her fiancé and was staying with a friend, and complained of crying all the time and not sleeping. (Id.). Part of the note appears to be cut off. However, at the time of the administrative hearing on July 11, 2006, the plaintiff testified that she was seeing a counselor once or twice a week, and was living in a shelter because of emotional abuse from her significant other. (Tr. 299, 305). The implication that she was not receiving counseling appears to be incorrect.

The only other evidence regarding the plaintiff's mental status from an examining source was from a psychologist, Dr. Gary Maryman, who had examined the plaintiff on July 5, 2005, prior to seeking treatment from Dr. Siegel. At that time, the plaintiff stated that Prozac and Wellbutrin were helpful, and she was not obtaining any outpatient mental health services other than from her family physician. (Tr. 176). Dr. Maryman noted no acute emotional distress and thought that the plaintiff was actually in a good mood. (Tr. 177). The plaintiff described being

molested as a child and had occasional suicidal thoughts, in addition to describing weight loss, reduced appetite, and poor sleep.  She also admitted having a history of arrests for DUI and marijuana possession.  (Tr. 178).  In any case, Dr. Maryman diagnosed a moderate dysthymic disorder and childhood sexual abuse, with a current Global Assessment of Functioning (GAF) score of 60.  (Tr. 180).  A GAF score in this range reflects moderate impairments per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision) (DSM-IV-TR), p. 34.  Dr. Maryman did not indicate that there would be any specific functional restrictions other than understanding, retaining, and carrying out more than "somewhat . . . complicated instructions and tasks."  (Id.).

Two state agency psychologists reviewed the record and asserted that the plaintiff did not have a "severe" mental impairment.  However, the first reviewer, Dr. Larry Freudenberger, reviewed the record before Dr. Siegel's notes were submitted (Tr. 182), and based his opinion largely on Dr. Maryman's report (Tr. 194).  The second reviewer, Lea Perritt, did not comment on the additional evidence from Dr. Siegel, simply indicating that she agreed with the previous assessment.  (Tr. 206, 220).

Therefore, much of the evidence regarding the plaintiff's psychotropic medications and specialized medical treatment was not considered by the state agency sources.  The ALJ did find that depression was a "severe" impairment, but

inconsistently did not find any mental restrictions.  Moreover, a consultative physical examiner, Dr. Jeff Reichard, while finding that the plaintiff had a normal physical examination, indicated that there was "likely a significant psychological component to her pain syndrome."  (Tr. 201).  Since there are multiple gaps and inconsistencies in the ALJ's analysis of the evidence relating to mental restrictions, the court cannot find that her ultimate conclusion that the plaintiff had no mental restrictions is supported by substantial evidence.

The plaintiff also challenges the ALJ's conclusion that her clinical and diagnostic evaluations had been relatively unremarkable with no documentation of any musculoskeletal abnormality which could reasonably be expected to result in the degree of pain alleged.  (Tr. 25).  The plaintiff points out that a cervical spine x-ray in January, 2004 showed narrowing of disk spaces between C4 and C7 and some arthrosis in the facet joints with encroachment on the neuroforamina at C5/C6 and C6/C7.  (Tr. 164, 276).  This study was followed by an MRI of the cervical spine in April, 2004 showing degenerative disc disease at C4 through C7, with protrusions at three levels, spinal stenosis, and neuroforaminal narrowing.  Although the ALJ mentioned these results in a portion of her decision, there was no analysis of why she interpreted these results as "relatively unremarkable" and inconsistent with complaints of severe neck pain.  (Tr. 22, 25).  Although Dr. Reichard, the physical consultant, found a normal physical examination, he was provided no previous

records and obviously was not aware of the MRI results.  In addition, the plaintiff's allegation of fibromyalgia was supported by a diagnosis by a rheumatologist, Dr. Manoj Kohli, who found 15 out of 18 positive trigger points and somewhat reduced grip strength at a July, 2005 consultation.  (Tr. 224-5).  The plaintiff reported her diagnosis of fibromyalgia to Dr. Reichard and he noted that she described "very typical migratory musculoskeletal pain in her hands, shoulders, back, hips, and lower extremities."  (Tr. 199).  Dr. Reichard did not appear to perform any specific testing for fibromyalgia, instead focusing on the fact that the plaintiff had a normal range of motion and no neurological deficits.  (Tr. 200-2).  The Sixth Circuit has noted that relatively normal physical results can be expected with a diagnosis of fibromyalgia, and the process includes testing a series of focal points for tenderness and ruling out other possible conditions through objective medical and clinical trials.  Rogers v. Commissioner of Social Security, 486 F.3d 234, 244 (6th Cir. 2007) (citations omitted).  The court quoted with approval its prior decision in Preston v. Secretary of Health and Human Services, 854 F.2d 815, 820 (6th Cir. 1988) in which it was noted that "CT scans, x-rays, and minor abnormalities, noted by these doctors and cited by the Secretary as substantial evidence of no disability . . . are not highly relevant in diagnosing [fibromyalgia] or its severity."  Id. at 820.  The Rogers court also placed emphasis on the fact that fibromyalgia had been diagnosed by a "rheumatologist, and thus a specialist in the particular types of conditions Rogers

claims to suffer from." Rogers, 46 F.3d at 245. Therefore, in view of these deficiencies, the ALJ's analysis of the medical evidence regarding physical impairments was inadequate.

The plaintiff additionally points out that a treating non-medical source, John Sipple, DC, who had treated her extensively for neck and back pain between 2004 and 2006 (Tr. 278-84), had offered the opinion that she was unable to perform work for any length of time without pain (Tr. 198). While the opinion of a chiropractor is not binding on the Commissioner under 20 C.F.R. Section 404.1513, Social Security Ruling 06-03p notes that "there is a requirement to consider all relevant evidence in an individual's case record," and therefore "the case record should reflect the consideration of opinions from . . . 'non-medical sources who have seen the claimant in their professional capacity.'" Social Security Ruling 06-03p. Generally, the ruling provides that the adjudicator should explain the weight given to these other sources and ensure that the discussion of the evidence allows the claimant or subsequent reviewer to follow the adjudicator's reasoning. Since the chiropractor was not mentioned at all in the ALJ's decision, this guidance was clearly not followed.

Finally, the plaintiff asserts that the ALJ did not properly analyze her past relevant work and failed to make any objective findings about their requirements. While the ALJ did obtain testimony from the VE regarding the exertional and skill demands of the plaintiff's jobs, as previously described, it appears that a number of

06-531  Banks

these positions may have been held for very short periods of time.  However, at least some of the jobs were held for a year or more according to the plaintiff's work history report (Tr. 87) and testimony at the administrative hearing (Tr. 302-3).  Accordingly, although the ALJ did not make specific findings of fact in her decision regarding the physical and mental demands of the previous jobs and occupations, any error in this regard is harmless in the absence of non-exertional limitations; however, if non-exertional limitations are found to be justified on remand, more detail regarding the job requirements of the plaintiff's past <u>relevant</u> work will be necessary.

The decision will be remanded for further consideration.

This the 21st day of September, 2007.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**